IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PNC FINANCIAL SERVICES GROUP, INC. and PNC Bank, N.A., <br><br> Defendants. | Civil Action No. 2:13-cv-00740-AJS <br><br> U.S. District Judge Arthur J. Schwab <br><br> **ELECTRONICALLY FILED** |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO LIMIT THE NUMBER OF ASSERTED CLAIMS AND ACCUSED PRODUCTS IN PLAINTIFFS' INFRINGEMENT CONTENTIONS

Consistent with LPR 3.2 and this Court's Case Management Order (D.I. 38), plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively "IV") timely disclosed their asserted claims and infringement contentions. Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively "PNC") allege no tardiness nor inadequacy in IV's infringement contentions. Rather, despite the fact that IV asserted only 18 independent claims, PNC contends that IV asserted too many claims and demands that IV be limited to a total of 15.[1] But neither the Court's Case Management Order ("CMO") nor LPR 3.2 imposes any limit on the number of asserted claims IV's infringement contentions assert just as many claims as are required less than three months into the case, nothing more nor less. PNC identifies nothing in the LPR, the Court's CMO, or even in the cases it cites from other districts limiting the number

---

[1] PNC's Complaint that IV asserted 78 claims, and its demand that IV be limited to 15, makes no distinction between independent and dependent claims. But because IV asserted only 18 independent claims, PNC must mean to include dependent claims within it proposed 15 claim limitation, since it would hardly be worth an "Emergency Motion" to attempt to reduce 18 asserted independent claims to 15. However, it is the number of independent claims which add complexity, since by definition proof of infringement of an independent claim is necessary to prove infringement of the dependent claim from which it depends.

1

of claims a plaintiff can assert at such an early stage in a case. The Federal Circuit cases upon which PNC relies say that a district court *may* limit the number of asserted claims under certain circumstances, not that it must, and both those cases and the district court cases upon which PNC relies limit the number of claims late in the case, not at the beginning as here.

Of course, IV does not intend to present all 78 claims identified in its infringement contentions at trial, which is what the Court appeared to be addressing when it said that too many claims asserted by a plaintiff "weakens the case and often causes jury confusion. So I'm sure they're focused on that." (See D.I. 46 at *3, quoting transcript from Case Management Conference.)[2] But the time to reduce the number of asserted claims is not now, before IV has had a chance fully to analyze the Accused Instrumentalities and before IV has even received PNC's invalidity and non-infringement contentions.[3]

PNC also surprisingly asserts, without any authority whatsoever, that a plaintiff cannot identify "Accused Instrumentalities" in its LPR 3.2 infringement contentions that were not identified in the Complaint. That PNC cites no authority whatsoever for this extraordinary proposition surprises not at all, since it is directly contrary to the case law which does not require a Complaint always to identify even one accused product, much less all of them. And it cannot be reconciled with the express language of LPR 3.2, which requires identification of each asserted claim, and each Accused Instrumentality accused of infringing that claim. Nowhere

---

[2] IV cites to D.I. 46, PNC's corrected brief, although as far as IV can tell the citations are the same to PNC's original brief, D.I. 45.

[3] While PNC has produced some documents regarding the accused products identified in the Complaint, it has produced none regarding other products that it knew full well were encompassed by IV's Complaint. Much of the information necessary to understand the operation of PNC's accused products and services, including those named in the Complaint, is in the hands of PNC's vendors, and obtaining that information through the subpoena process will take some time. And, to date, PNC has failed to produce source code for even the products named in the Complaint.

2

does LPR 3.2 state or imply that Accused Instrumentalities must have been identified in the Complaint.

## FACTS

On May 29, 2013, IV filed its Complaint asserting five patents and identifying and accusing a different PNC product or service of infringing each patent ("Accused Instrumentalities"). (*See* D.I. 1 at ¶¶ 22, 27, 33, 39 and 45.[4]) On July 2, 2013 the parties conducted their Rule 26(f) conference and on July 5, 2013, the parties filed their Rule 26(f) report, attached to which as Exhibit A was a Proposed Case Management Order ("Proposed CMO"). (D.I. 34-1). In the Proposed CMO, PNC agreed that IV would serve its Disclosure of Asserted Claims and Infringement Contentions by August 16, 2013 (D.I. 34-1 at ¶ 3) and that PNC would serve its Disclosure of Non-infringement and/or Invalidity Contentions by August 30, 2013 (D.I. 34-1 at ¶ 5). The CMO entered by the Court following the Case Management Conference on July 15 adopted those dates without revision or objection to them by PNC, at the CMC. (*See* D.I. 38 at ¶¶ 3, 5.) IV duly served its Disclosure of Asserted Claims and Infringement Contentions when due on August 16, 2013.

PNC now complains that "IV offers no reason that it could not have identified these products or claims much earlier." (D.I. 46 at p.1.) But IV does not need to offer a reason for complying with the Court's CMO, much less complying with dates that PNC itself jointly proposed to the Court with IV.

---

[4] Count four accuses two related products, Visa Business Check Card and Visa Information Source Select system/service. D.I. 1 at ¶ 39.

3

## ARGUMENT

### I. IV's INFRINGEMENT CONTENTIONS FULLY COMPLY WITH LPR 3.2 AND THIS COURT'S CMO

Having asserted that IV's infringement contentions are "in direct contradiction to the Local Patent Rules" (D.I. 46 at p. 6), one would have expected PNC to identify at least one Local Patent Rule which IV disregarded, or one case for the proposition that the LPR imposes limits on the number of claims that can be asserted in infringement contentions. It does not, because there is no such rule nor case. Rather, PNC cites a number of cases from this District that stand for the unremarkable, general proposition that the Local Patent Rules are designed to promote the efficient resolution of patent cases by requiring the early disclosure of infringement contentions, and from other districts limiting the number of asserted claims at the end of the case, not at the beginning.

While both the Local Patent Rules and the CMO could have imposed limits on the number of asserted claims, neither did. IV's infringement contentions fully comply with the Local Patent Rules, and LPR 3.2 in particular. Apparently PNC is now dismayed that the schedule it jointly proposed to the Court (D.I. 34-1), and which the Court adopted (D.I. 38), requires it to comply with LPR 3.4. But PNC should not be heard to complain since the Court adopted the very dates for PNC's LPR 3.4 disclosures as PNC and IV jointly requested.

#### A. IV's Assertion of 78 Claims Very Early In the Litigation Is Proper

PNC complains that IV does not intend to present all of the claims at trial that it identified in its infringement contentions. But that is precisely what the Local Patent Rules, and the cases relied upon by PNC, contemplate as the process for narrowing down the number of asserted claims for trial.

IV started by charting each claim against each Accused Instrumentality IV believes is infringed by that claim pursuant to LPR 3.2. PNC next is to serve its invalidity and non-infringement contentions pursuant to LPR 3.4. Based on PNC's LPR 3.4 contentions and the

ensuing discovery, IV will select a subset of its asserted claims for trial, just as PNC will likely select for trial a subset of the prior art it identifies in its invalidity contentions. That is how the Local Patent Rules, and other district's local patent rules, streamline patent litigation. But PNC wants to short circuit the process, requiring IV to choose its claims for trial before it sees PNC's non-infringement and invalidity contentions and at the very start of discovery. That would be inconsistent with the letter and spirit of the Local Patent Rules.

1. **The cases cited by PNC do not support, much less compel, limiting the number of asserted claims this early in the case**

PNC cites no case holding that a court must limit the number of asserted claims, or that there is some limit on the number of asserted claims absent local patent rule or court order to that effect. PNC does cite four cases that stand for the unsurprising proposition that a court may order reasonable limits on the number of asserted claims at the appropriate time, but not one of them is applicable to the facts here where PNC seeks to limit the number of asserted claims at the very inception of the case.

PNC relies principally on *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1309-13 (Fed. Cir. 2011) for the proposition that the Federal Circuit affirmed the district court's order limiting the plaintiff to asserting 16 claims per defendant from the 1,975 claims plaintiff originally asserted. Yes, but not at the beginning of the case as PNC seeks to do here. *Katz* was a multi-district litigation where 25 cases brought in two districts were transferred to a third, whereupon 28 more cases were added. *Id.* at 1309. Following the transfer, the MDL-assigned district court initially limited Katz to 160 claims (40 per defendant group) and only after discovery was Katz limited to 64 claims (16 per defendant group). *Id* Indeed, Katz itself had proposed 200 claims (50 claims per defendant group), narrowing the number of claims to 80 (20 per group) after discovery. *Id.* The district court allowed Katz to add new claims beyond the

64-claim limit, so that "[i]n the end, Katz selected a total of almost 100 claims to be addressed in the consolidated cases." *Id.* at 1312.

But the limitation on the number of asserted claims was not even the issue on appeal. Rather, "Katz appeals the district court's decision not to sever and stay the unselected claims... and that due process requires that Katz be allowed to litigate the unselected claims either in this case or in subsequent actions." *Id.* at 1310. The Federal Circuit held that the district court did not violate due process by refusing to sever and stay the unasserted claims. Id at 1312-13.

PNC next relies on *Stamps.com Inc. v. Endicia, Inc.*, 437 F.App'x 897, 902-03 (Fed. Cir. 2011), for the proposition that the Federal Circuit affirmed the "district court's limitation of claims from 629 to 15." (D.I. 46 at p.7.) Again, the limitation on the number of asserted claims was not imposed less than three months into the case as here, but rather *16 months into the case.* ("On November 22, 2006, Stamps.com filed suit against Endicia, alleging infringement of 629 claims of eleven patents owned by Stamps.com.... On March 17, 2008, the district court granted Endicia's motion to limit the number of asserted claims." 437 F.App'x at 900.) And as with Katz, the issue on appeal was not the limitation on the number of asserted claims but whether having stated that it would entertain a motion to add additional claims, the district court improperly denied Stamps.com's motion to add them. *Id.* at 902. The Federal Circuit, in its unpublished decision, affirmed the district court's refusal to allow additional claims because Stamps.com failed to make a showing of good cause for adding them. *Id.* at 902-03.

PNC also relies on *NTP Inc. v. Research in Motion, Ltd.*, 270 Supp.2d 751, 761 (E.D. Va 2003) for the proposition that 2,400 claims were reduced to 16. Yet again, the number of claims was not at issue in the decision, except as it related to NTP's fee request. *Id.* at 753. And fully 500 claims were at issue until "shortly before Markman," which was reduced, apparently after

6

Markman, to 31 claims, and only to 16 "on the eve of trial." *Id.* at 761. Thus, like *Katz* and *Stamps.com*, *NTP* does not support limiting the number of asserted claims at the beginning of the case, as is the situation here.

Finally, PNC asserts that "this [presumably referring to reducing the number of asserted claims] is a common practice among district courts, especially in cases involving multiple patents. *See, e.g., Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-0038 JJF, 2005 WL 2304190, at *3 (D. Del. Sept 20, 2005)." (D.I. 46 at p. 8.) But like the first three cases relied on by PNC, the limitation on the number of asserted claims came very late in the case, not at the beginning as here. Indeed, the September 20, 2005 limitation on the number of asserted claims came exactly *20 months after the Complaint was filed*, more than six months after the *close* of discovery, *and less than two weeks before Markman. See id.* at *2. Here, the case is only three months old and the close of discovery and Markman are still months away.

2. **Limiting the number of claims, and the number of asserted prior art references and combinations, may be appropriate later in the case, but not yet**

IV is well aware of the Court's admonition that too many claims asserted by a plaintiff "weakens the case and often causes jury confusion. So I'm sure they're focused on that." (See D.I. 46 at *3, quoting transcript from Case Management Conference.) But the time to reduce the number of asserted claims is not now, before IV has had a chance fully to analyze the accused products or even has PNC's invalidity and noninfringement contentions. In fact, this District's local precedent, including the very cases cited by PNC, supports that claims should not be reduced at this stage in the proceedings. *See, e.g., In re Maxim Integrated Prods., Inc.*, No. 2354, 2013 WL 1909403 (W.D. Pa. May 8, 2013).

In *Maxim*, the moving parties filed a motion, only days after Maxim served its infringement contentions and before the moving parties served their own invalidity contentions, seeking to preclude Maxim from "relying upon allegedly undisclosed theories of indirect infringement, representativeness, and doctrine of equivalents... and to limit the scope of any future supplementation Maxim may attempt". *Id.* at 19. The court specifically found that the moving parties' motion was premature, holding that, "If, after further discovery, Maxim seeks to supplement or amend its infringement contentions, or if the Moving Parties wish to file a motion to strike the infringement contentions, the Moving Parties may object or move as they deem appropriate." *Id.* at 25. (citing in support *VoxPath RS, LLC v. LG Electronics U.S.A., Inc.*, No. 12-cv-952, 2012 U.S. Dist. LEXIS 163076, 2012 WL 5818143 at *4 (D. N.J. Nov. 14, 2012) ("Courts interpreting their own local patent rules have noted that '[i]nfringement contentions 'are not intended to be a forum for adjudicating the merits of the plaintiffs [sic] contentions.'" (quoting *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 712 (E.D. Tex. 2008)) and *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004)("Courts are hesitant to pre-try the case at this procedural stage by conducting a highly detailed and rigorous analysis of the preliminary claim infringement contentions... Instead, after allowing reasonable discovery . . . [courts] will entertain the appropriate motions for supplementation or dismissal."(internal quotation ommitted)) *Id.* at 23-24.).

Additionally, the *Maxim* court relied upon the local patent rules in finding that the motion was premature since LPR 3.7 specifically provides that "[t]he Court's ruling on claim construction may support a timely amendment or modification of the Infringement Contentions", and that the rules "require infringement contentions to be as specific as possible, <u>given the state of discovery in the case</u>."(emphasis added) *Id.* at 25-27. Lastly, the court noted that, as in this

case, no decision cited by the moving parties resolved a motion seeking relief just days after Maxim's infringement contentions were served.

The issues currently before this Court are almost identical to those addressed in *Maxim*. Therefore, based upon local precedent, the questions of whether IV should be required to reduce the number of asserted claims and whether PNC should be required to reduce the number of asserted prior art references and combinations should be revisited toward the close of discovery. Then, the parties and the Court will be in a better position to determine whether there should be a limit on the number of asserted claims and the number of prior art references and combinations.

**B.     IV Appropriately Identified the Accused Instrumentalities in its LPR 3.2 Disclosure**

PNC asserts that IV's LPR 3.2 Disclosure of Asserted Claims and Infringement Contentions "is incompatible with this Court's schedule and rules, and threatens to derail this case" because it "more than double[d] the scope of the accused products." (D.I. 46 at p.8.) But PNC does not explain how strict compliance with the Court's CMO and the LPR 3.2 schedule and rules could be incompatible with them. PNC does not contend that IV's identification of the Accused Instrumentalities is substantively deficient, nor that PNC cannot tell which of its products and services are accused of infringing which claims. As with PNC's Complaint that IV asserted too many claims, PNC's three arguments for why IV accused too many products is wrong.

*First,* PNC points to the tight deadlines in the Court's rules and CMO, and claims that "[i]n a five-patent case accusing the products and services of defendants' multiple business units of infringement, this schedule cannot be maintained if the plaintiff extends its case to encompass numerous new products and services in its infringement contentions." (D.I. 46 at p. 8.) But IV's LPR 3.2 Disclosure was precisely where IV was supposed to identify the Accused

Instrumentalities. LPR 3.2 requires the Disclosure of Asserted Claims and Infringement Contentions to be served thirty calendar days after the Initial Scheduling Order, and the Court's CMO is consistent with that Rule. The date set by LPR 3.4 for PNC's invalidity and non-infringement contentions does not depend on the number of patents asserted or the number of Accused Instrumentalities identified in either the Complaint or the LPR 3.2 Disclosure. Since the dates in the Court's CMO follow directly from the Local Patent Rules, it would have made no difference to the timing of PNC's LPR 3.4 Contentions if the Complaint had identified every Accused Instrumentality identified in IV's LPR 3.2 Disclosure or just some of them.

***Second***, PNC asserts that IV's compliance with LPR 3.2 and identifying more Accused Instrumentalities than are named in the Complaint is "unfair." To support this contention, PNC relies on *Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3-08-CV-0977, 2009 WL 4884091, at *2 (N.D. Tex Dec. 16, 2009) for the proposition that "[t]he purpose of preliminary infringement contentions is to provide notice of the accusing party's specific theories of infringement." (D.I. 46 at p. 9.) The quote is accurate, but it directly supports IV's position and flatly contradicts PNC's argument. Tellingly, PNC does not contend that IV's comprehensive disclosure of asserted claims and infringement contentions fail to "provide notice of the accusing party's specific theories of infringement." IV complied with both the letter and spirit of LPR 3.2 and the Court's CMO.

***Third***, PNC asserts that identification of Accused Instrumentalities not named in the Complaint in IV's Disclosure of Asserted Claims and Infringement Contentions as required by LPR 3.2 is "unjustifiable" because IV's infringement contentions were based entirely upon publicly available information. (D.I. 46 at p. 9.) PNC seems to argue, without actually saying so, that IV's Complaint was required to identify every product IV intended to accuse of

infringement if it could do so based on public information   Once again, PNC cites a number of cases, but none that support its position.  This is not surprising because PNC's argument is directly contrary to Federal Circuit law.

For example, in *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir. 2013), decided earlier this year, the Federal Circuit held that a complaint need not even identify one accused device, much less all of them.  It is enough that the complaint identifies the patents and the general category of products or features accused of infringement. *Id.* at 1286-87. And IV's Complaint "need not even identify which claims it asserts are being infringed." *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) (citation omitted).

IV was not required to identify all the Accused Instrumentalities in its Complaint. Rather, IV was required to do so in its Local Patent Rule 3.2 Disclosure.  PNC makes no argument that IV failed to disclose all the Accused Instrumentalities there, nor could it.  PNC's motion therefore should be denied.

## II. NO ALTERATION TO THE SCHEDULE SET FORTH IN THE LOCAL PATENT RULES, AS ADOPTED IN THE CASE MANAGEMENT ORDER, IS APPROPRIATE

PNC demands that even if its motion to limit the number of IV's asserted claims early in the case were denied, it should still get more time to prepare its LPR 3.4 contentions.  But PNC is represented by not one, but two of the largest law firms in the United States, both of whom promote the breadth and depth of their patent litigation practices.  They should not be now heard to complain that they cannot comply with the LPR 3.4 schedule which applies to all patent cases in this District, to which PNC expressly agreed, and which this Court expressly adopted in its CMO.

## CONCLUSION

PNC does not even allege that IV's LPR 3.2 Disclosure was untimely or inadequate, because it demonstrably was neither. Rather, IV fully complied with LPR 3.2 and the Court's CMO adopting it. There is no "emergency" that would justify excusing PNC from complying with the Local Patent Rules in its home district, and a schedule to which it stipulated and which this Court adopted in its CMO, after IV fully complied with its obligations under those Rules and that Order. PNC's Emergency Motion should be denied.

Dated: August 26, 2013

Respectfully submitted,

ZIMMER KUNZ, PLC
/s/ Daniel E. Krauth
Daniel E. Krauth
Pa. I.D. 59674
Email: krauth@zklaw.com
Joseph F. Butcher
Pa. I.D. 86464
Email: butcher@zklaw.com
Samantha A. Quinn
Pa. I.D. 310068
Email: squinn@zklaw.com

FEINBERG DAY ALBERTI &
THOMPSON LLP

Ian N. Feinberg Day
Appearing *pro hac vice*
Email: ifeinberg@feinday.com
Margaret Elizabeth Day
Appearing *pro hac vice*
Email: eday@feinday.com

David L. Alberti
Appearing *pro hac vice*
Email: dalberti@feinday.com

Clayton Thompson
Appearing *pro hac vice*

Case 2:13-cv-00740-AJS   Document 47   Filed 08/26/13   Page 13 of 14

Email: cthompson@feinday.com
Marc C. Belloli
Appearing *pro hac vice*
Email: mbelloli@feinday.com
Sal Lim
Appearing *pro hac vice*
Email: slim@feinday.com
Yakov Zolotorev
Appearing *pro hac vice*
Email: yzolotorev@feinday.com
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone: (650) 618.4360
Facsimile: (650) 618.4368

*Attorneys for Non-Party*
Mary Tannenbaum

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email on August 26, 2013.

*/s/ Margaret Elizabeth Day*
Margaret Elizabeth Day